IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Case No. 1:18-cv-02058-DDD-GPG

NICHOLAS M. METZLER, and
TRACY L. METZLER,

    Plaintiffs,

v.

WESLEY T. BALL,

    Defendant.

## ORDER GRANTING SUMMARY JUDGMENT

The parties to this dispute are neighbors unable to agree about the legal status of a road, built through one property, but not constructed on a mapped line representing a planned easement for the benefit of the other property. Somewhat to the Court's surprise, the case is properly in federal court pursuant to 28 U.S.C. 1332. (*See* Docs. 22, 25, 27, 31.) Now before the Court are the parties' fully briefed counter-motions for summary judgment. (Docs. 36, 45, 46, 47, 49, 50.) The Court **GRANTS** Plaintiffs' motion and **GRANTS** in part and **DENIES** in part Defendant's motion.

I.     **UNDISPUTED MATERIAL FACTS**

This quarrel involves two adjacent properties in the More Ranch Subdivision along the Yampa River near Steamboat Springs in Routt County, Colorado. The More Ranch Subdivision Plat Map ("Plat") consists of four lots and was recorded in

the real property records of Routt County in 2005.[1] Currently, the Metzlers own Lot 1, and Wesley Ball owns Lot 2. Brad Piske formerly owned Lot 2, but sold it to Mr. Ball in 2015.

The Plat describes the legal boundaries of Lots 1 and 2 and provides descriptions for all legally recorded property interests, including easements. At issue here, the Plat identifies "Easement No. 3," marked with a dotted horizontal line crossing Lot 2, as a "35-foot wide access, egress and public utility easement for the benefit of Lot 1, to be located over a newly constructed road at a later date." No road has ever been built across the Easement No. 3 route depicted in the Plat.

Before Mr. Ball purchased Lot 2, however, Mr. Metzler and Mr. Piske discussed the possibility of relocating Easement No. 3,[2] and eventually constructed a "14FT-wide gravel access road" ("Road") through Lot 2 on a different path.[3] At deposition, Mr. Piske expressed that he had reservations about, but permitted, the Road's creation:

> **Q. Did you ever object at any time when the road was being built, like hey, I don't want a road across?**
>
> A. Well, in the beginning I didn't want a road across the property. But -- because we were for sale but Nick [Metzler] was driving across the property and I didn't want to block his access. And I knew he wanted to build a road while we

---

[1] *See generally* Doc. 36-1, at 3 (containing a map of the properties in question).

[2] On November 13, 2013, Mr. Piske wrote to Mr. Metzler: "Do you know the next step required to vacate the old easement and record the new one?" Doc. 47-3.

[3] *See* Doc. 34-6. The "improvement survey" reflected in this document was performed on February 6, 2015. It depicts the Road as tracking along a "proposed 40' wide access, egress and public utility for benefit of Lot 1" in a location distinct from Easement No. 3.

2

> were the owners because he knew us. And I remember having that discussion with my wife who also didn't want to build the road and didn't want to spend the money. I didn't want the construction while we were under -- while we were trying to sell the property but, you know, like I said I didn't -- I understood.

He testified that there was "no way" a road could be built to track the straight-line path designated as Easement No. 3 on the Plat because that area is wetland. As he further explained in an e-mail, the Road was built to be a permanent easement:

> The process required Army Corps of Engineering and gravel-haul permits, wetlands mapping, site meetings with Corps officials and hydrologists and three build seasons to complete. It demanded a 3-foot excavation of the entire length, liner installation and backfill from screened materials, all while remaining outside of wetlands fill violations. The culvert crossing was permissible because it was constructed on an old crossing for hay equipment already in existence. . . . [T]he existing road was basically overbuilt for permanence as an easement, and was done with thorough knowledge of the property through years of use in all seasons.

He also stated that the Road was indeed the easement contemplated by the Plat:

> **Q. Then you and Mr. Metzler worked together to build a road across Lot 2 to get to Lot 1?**
>
> A. Correct.
>
> **Q. That was the access to Lot 1 contemplated in the plat, right?**
>
> A. Correct.

But he also testified that he and Mr. Metzler did not have an agreement to form an easement at the location of the Road concurrent with the sale to Mr. Ball. Nor did Mr. Piske, Mr. Metzler, or Mr. Ball ever execute a written document reflecting the

3

relocation of any easement or the establishment of a new one, even though Mr. Metzler requested that Mr. Piske do so.

In January 2015, Mr. Ball entered into a contract to purchase Lot 2 from Mr. Piske. On February 6, an "improvement survey" was completed on behalf of Mr. Piske ("Survey"). The Survey depicts both the straight-line Easement No. 3, as reflected in the Plat, and the Road, designated as a separate "proposed 40' wide access, egress and public utility for benefit of Lot 1."

On April 2, Mr. Ball closed on Lot 2. On April 6, he recorded a general warranty deed, which reflects that he took the property subject to exceptions, including certain recorded easements and "matters disclosed on improvement survey plat issued by Four Points Surveying and Engineering certified February 15, 2015," including the Road. Mr. Ball nonetheless has always opposed any suggestion that an easement exists at the location of the Road. On April 7, Mr. Ball sent Mr. Metzler a letter further explaining his position that there is no easement tracking the Road. Despite his legal position, Mr. Ball has never blocked the Metzlers from using the Road.

On June 28, 2018, the Metzlers filed this action in the Colorado District Court for Routt County. Mr. Ball removed it here, invoking the Court's diversity jurisdiction.[4] The Metzlers seek (1) a declaration that Easement No. 3 has been

---

[4] The Metzlers are citizens of Colorado. Mr. Ball is a citizen of Texas. (Doc. 1, at 2.) On December 17, 2018, the Metzlers voluntarily dismissed Defendant Community Bank of Texas, N.A. (Doc. 29.) Based on the Metzlers' offer of $50,000 to settle one of the declaratory judgment claims, the likely change in valuation of the properties based on the outcome of the case, and the potential damages for the tort claim, the Court permitted it to go forward here after the parties' joint

4

relocated to the location of the Road ("Claim One"); (2) a declaration that an easement by estoppel has been created over the location of the Road ("Claim Two"); and (3) damages for Mr. Ball's alleged tortious interference with their easement rights ("Claim Three"). All claims sound in Colorado law. The Metzlers now seek summary judgment only on Claim One. Mr. Ball counter-moves for summary judgment on all claims—asserting that they are barred by the statute of limitations, that Claim One is additionally barred by the statute of frauds, and that Claim Two further fails for lack of a prima facie showing.

## II. ANALYSIS

The purpose of a summary judgment motion is to assess whether trial is necessary.[5] *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is appropriate if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). A fact is material if it could affect the outcome of the suit under governing law; a dispute of fact is genuine if a rational jury could find for the nonmoving party on the evidence presented. *Id.* If a reasonable juror could not return a verdict for the nonmoving

---

representation that the amount in controversy exceeded $75,000 (*see* Doc. 27 (joint status report on amount in controversy); Doc. 31, at 2 (finding jurisdiction)). *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014) ("If the plaintiff contests the defendant's allegation, § 1446(c)(2)(B) instructs: '[R]emoval . . . is proper on the basis of an amount in controversy asserted' by the defendant 'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold.").

[5] The parties here have elected to have all matters tried by the Court, rather than a jury. (Doc. 30.)

party, summary judgment is proper and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the moving party bears the burden of demonstrating no genuine issue of material fact exists. *Adamson*, 514 F.3d at 1145.

In deciding whether the moving party has carried its burden, courts do not weigh the evidence and instead must view it and draw all reasonable inferences from it in the light most favorable to the non-moving party. *Adamson*, 514 F.3d at 1145. But neither unsupported conclusory allegations nor mere scintillas of evidence are sufficient to create a genuine dispute of material fact on summary judgment. *Maxey v. Rest. Concepts II, LLC*, 654 F. Supp. 2d 1284, 1291 (D. Colo. 2009). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, a court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2).

## A. Threshold Matters

### 1. Justiciability of Tort Claim

The Metzlers' third claim is for "Tortious Interference with Easement Rights," which the Court cannot locate by name in Colorado law. (*See* Doc. 3, at 5.) The claim merely alleges that "Defendant Ball's assertions and actions interfered with the [Metzlers'] easement rights and created a cloud on the title to Lot 1," a threadbare assertion inviting speculation on the legal theory advanced and conduct underlying it. The claim is an example what some courts have called a "shotgun complaint," one which "fails to link adequately a cause of action to its factual

6

predicates," or which combines multiple theories of relief into a single claim. *D.R. Horton, Inc. v. Curb N., Inc.*, No. 07-cv-709, 2008 WL 11409168, at *2 (D.N.M. Sept. 22, 2008).[6]

Nowhere is the effect of this pleading ambiguity more glaring than in the Metzlers' response to Mr. Ball's motion on Claim Three. Their argument, in their own brief, wavers around what they call "factual disputes" on claim accrual, which effectively demonstrate their failure to state any version of a tort claim:

> ***Ball has never obstructed the Easement, meaning there was no direct risk to the Metzlers' access or title***. And as noted above, the ***mere perception of a risk is not enough to cause a claim to accrue under Colorado law***. Therefore, the Metzlers' 2015 letters do not constitute evidence of accrual.

(Doc. 49, at 10 (emphasis supplied).) Using their words, the Metzlers filed "on the mere perception of risk" and this "is not enough to cause a claim under Colorado law." *See, e.g.*, *Jessee v. Farmers Ins. Exchange*, 147 P.3d 56, 59 (Colo. 2006) ("The Supreme Court will not consider uncertain or contingent future matters"); *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it

---

[6] *See also Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) ("Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings. The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. . . . The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. . . . The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.").

7

rests upon contingent future events that may not occur as anticipated, or may not occur at all.").

The claim appears not to be late, as Mr. Ball argues, but if anything, premature. The proper course, therefore, is to dismiss Claim Three, not on statute of limitations grounds as Mr. Ball requests, but for lack of subject matter jurisdiction. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498–99 (10th Cir. 1995) ("The question of whether a claim is ripe for review bears on a court's subject matter jurisdiction under the case or controversy clause of Article III of the United States Constitution."); *Stell v. Boulder Cty. Dep't of Soc. Servs.*, 92 P.3d 910, 914 (Colo. 2004), *as modified on denial of reh'g* (July 12, 2004) ("The doctrine of ripeness additionally requires an injury to be sufficiently immediate and real in order to warrant adjudication."). The Metzlers have litigated this case for more than a year. They have had unfettered access to discovery and amendment procedures. They concede that Mr. Ball has not interfered with their access to the Road in any way other than by opposing their legal arguments. That they, at this juncture, still cannot definitively locate in time a harm under any tort theory makes it obvious that the facts alleged do not support a justiciable claim. The Court therefore dismisses Claim Three without prejudice because it presents no controversy for adjudication.

## 2. Statute of Limitations in Actions for Declaratory Judgment

The Metzlers brought their remaining claims, both for declaratory judgment, pursuant to Colorado Rule of Civil Procedure 57.[7] Whether the claims are time-barred, as Mr. Ball argues, is of preliminary concern. In cases, like this one, based on diversity jurisdiction over state-law claims, a federal court applies the substantive law of the state in which it sits, including state-law limitations periods. *Burnham v. Humphrey Hosp. Reit Tr., Inc.*, 403 F.3d 709, 712 (10th Cir. 2005). In Colorado, there is "no statute of limitations specifically applicable to declaratory judgment actions," *Harrison v. Pinnacol Assur.*, 107 P.3d 969, 972 (Colo. App. 2004), but actions of every kind "for which no other period of limitation is provided" must be brought within two years of accrual. Colo. Rev. Stat. § 13-80-102(1)(i). Under this authority, according to Mr. Ball, the Metzlers' claims accrued by no later than April 7, 2015, the last of many exchanges between the parties demonstrating the Metzlers had actual knowledge of Mr. Ball's hostile legal position regarding the Road. And because the Metzlers did not file this action until June 28, 2018, over three years

---

[7] Claims One and Two were formally drafted with reference to state procedural law. But, unlike statutes of limitations, which are substantive, "declaratory judgment acts are procedural rules, [and] federal law determines whether a district court may properly enter a declaratory judgment in a diversity case." *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1194 (D. Colo. 2018) (citation omitted); *Burnham*, 403 F.3d at 712. The federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

later, Mr. Ball asserts all three are claims untimely under the two-year limitations catch-all.

In *Harrison*, to which both parties cite, the court applied the two-year catch-all statute of limitations to an action for declaratory judgment regarding settlement apportionment. *Id.* To Mr. Ball, this closes the issue and forecloses the Metzlers' claims. But as the Metzlers correctly point out, even *Harrison* suggested the catch-all would not control a claim for declaratory judgment where the complaint pleads a legal theory of recovery to which a particular limitation period could be applied. *Id.* (citing *Molleck v. City of Golden*, 884 P.2d 725 (Colo. 1994) (holding declaratory judgment action disputing an election untimely based on a former ten-day version of the statute of limitations for election contests)). Both state and federal law, after all, recognize declaratory judgment as a procedural, rather than substantive, remedy that does not confer rights or create causes of action. *Am. Family Mut. Ins. Co. v. Bowser*, 779 P.2d 1376, 1380 (Colo. App. 1989); *Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978). A court's task, therefore, is to look behind the label of the claim to discern its basic nature.

According to the Metzlers, their declaratory judgment counts are most analogous to substantive claims seeking to quiet title. Mr. Ball responds by distinguishing a declaration of rights under a deed from an adjudication of title. Either way, the two-year catch-all does not apply. In circumstances analogous to those at issue here, this Court, noting that *Harrison* distinguished itself from *Molleck*, commented that "[s]hould the law of real property provide an applicable

limitations period[] to this declaratory judgment action, *Harrison* provides that the catch-all statute of limitations does not apply." *Mindock v. Dumars*, No. 18-cv-3240-RBJ, 2019 WL 2173931, at *4 (D. Colo. May 20, 2019). And, as to actions such as these that seek to establish the right to an interest in land, the relevant limitations period is eighteen years. Colo. Rev. Stat. § 38-41-101 ("No person shall commence or maintain an action for the recovery of . . . possession or to enforce or establish any right or interest of or to real property . . . unless commenced within eighteen years after the right to bring such action or make such entry has first accrued."). No statute of limitations has run, therefore, and the Court considers the merits of Claims One and Two.

**B. Claim One**

The Metzlers seek, in Claim One, "a declaration that Easement [No.] 3 has been relocated to that portion of Lot 2 across the [Road]." In their briefing, the Metzlers further argue that Mr. Ball had either constructive, inquiry, or actual notice of the Road, and "[t]hus, Ball took Lot 2 subject to the easement located along the constructed Road." (Doc. 36, at 9.)[8] Mr. Ball does not contest that he had notice of the Road or that Easement No. 3 was validly created. He merely asserts that the

---

　　8  The Court notes that whether Mr. Ball had notice of the Road sufficient such that Colorado's race-notice recording statute operates against him is an inquiry distinct from whether Easement No. 3 was legally relocated or fixed in a certain location. Technically, Claim One does not ask the Court to determine whether Mr. Ball was on notice, but the Metzlers' briefing almost exclusively addresses that issue. And Mr. Ball does not contest that he was on notice of the Road at the time he purchased Lot 2. The "actual controversy" here to be decided by declaratory judgment concerns the legal status of the Road, rather than whether Mr. Ball was sufficiently aware of it.

11

Plat provides a specific legal description and boundary for the easement, including width, length, and coordinates—which he believes fixed the easement there. He argues that the very existence of the Road in an alternative location is legally untenable under the statute of frauds.[9]

Colorado's statute of frauds reads:

> No estate or interest in lands, . . . nor any trust or power over or concerning lands or in any manner relating thereto shall be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance in writing subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent thereunto authorized by writing.

Colo. Rev. Stat. § 38-10-106. There is no question that this applies to the creation of an easement. *See, e.g.*, *Stewart v. Stevens*, 15 P. 786, 789 (Colo. 1887). The parties do not dispute this; nor do they dispute that the original More Ranch Plat validly created an easement across Mr. Ball's land for the benefit of the Metzler's property under the statute of frauds.

The dispute is purely over the location of the easement: Mr. Ball argues that its location was fixed by the line on the Plat map, and any effort to move it had to likewise comply with the statute. The Metzlers counter that either (1) Easement No. 3 was *relocated* to track with the Road, or (2) the location of Easement No. 3

---

[9] As with the statute of limitations, the Court looks to Colorado law. *Blanke v. Alexander*, 152 F.3d 1224, 1231 (10th Cir. 1998) ("[I]t is well recognized that Congress did not intend the procedural rules to preempt the so-called "substantive" state rules of evidence, such as . . . the statute of frauds.").

was never fixed *until* the Road was built. The Court agrees with the Metzlers that under either theory, the statute of frauds does not apply.

The starting point here is to recognize that an easement is not a particular piece of land, but a right to use some part of another's land for a particular purpose. *Coregis Ins. Co. v. Law Offices of Phillip S. Decaro, P.C.*, 232 F.3d 900 (10th Cir. 2000) (citing *Lamar Truck Plaza, Inc. v. Sentry Ins.*, 757 P.2d 1143, 1144 (Colo. App. 1988)). Thus, the *creation* of an easement right is the process referenced in cases like *Stewart v. Stevens*, and it is that which must comport with the statute of frauds. 15 P. at 789 ("[E]asements of land are by the statute of frauds to be evidenced by properly executed and authenticated written instruments, and . . . are not to be otherwise created."). And as noted, there is no dispute here that that right was indeed validly created by the original Plat.

From there, it is equally clear under Colorado law that an easement can be validly created even if the writing does not set forth the precise location and contours of its route. The parties may then, after creation, set the location by conduct or agreement without implicating the statute of frauds. *See Stevens v. Mannix*, 77 P.3d 931, 933 (Colo. App. 2003) (If a "valid easement is granted without fixing in writing its location, the location may be determined based on the conduct of the parties. Alternatively, the parties may mutually agree on the location of the easement.") (citing *Isenberg v. Woitchek*, 356 P.2d 904, 907 (Colo. 1960)). And while it appears less firmly settled, the Court is also convinced that Colorado courts would apply the Restatement rule that the owner of a servient estate can, again without

13

offending the statute of frauds, relocate an established easement over their property so long as the relocation does not significantly lessen the utility of the easement, increase the burdens on the owner of the easement in its use and enjoyment, or frustrate the purpose for which the easement was created. *See Roaring Fork Club, L.P. v. St. Jude's Co.*, 36 P.3d 1229, 1235–36 (Colo. 2001), *as modified on denial of reh'g* (Dec. 17, 2001) (quoting and adopting the approach of the Restatement (Third) of Property (Servitudes) § 4.8(3) (2000)).

The Restatement explicitly addresses situations like the one before the Court:

> *Practical location of a servitude.* When improvements are constructed or installed on the servient estate for the enjoyment of a servitude without objection from the servient owner, the parties have given a practical construction to the instrument or agreement that created the servitude. Even if the instrument specifies a different location, the location is fixed by the placement of the improvements unless the language or circumstances lead to the conclusion that the initial location is temporary.

Restatement (Third) of Property (Servitudes) § 4.8(3) cmt. c (Am. Law Inst. 2000). In other words, unless the granting document expressly prohibits it, the parties to an easement can *always* locate or relocate an easement, whether or not its prior location was fixed, and can do so through their conduct or otherwise, without application of the statute of frauds. Given this legal framework, whatever the meaning of the line on the More Ranch Plat map, the Metzlers prevail so long as they can show that Mr. Piske allowed them to create and use the Road as the means of exercising the right of access granted via Easement No. 3.

14

There can be no legitimate dispute that this is the case. All of the evidence submitted supports the conclusions that Mr. Piske, despite some misgivings, intentionally permitted the Metzlers to locate the Easement No. 3 over the Road.[10] He both testified and told the Metzlers they were permitted to build and use the Road in that location. He testified that there would be "no way" to build an actual road, which is what Easement No. 3 requires, over the location indicated on the Plat.[11] He in fact allowed the Road to be built and used precisely as Easement No. 3 is described in the text of the Plat.[12] He never interfered with or took any action suggesting otherwise. No reasonable finder of fact could determine that this was anything other than the owner of the servient estate, through his conduct and discussions with the owners of the dominant estate, affirming that the Road would serve as the right granted in Easement No. 3.[13]

---

[10] Piske Dep., Doc. 46-6, at 66:10–21.

[11] Piske Dep., Doc. 47-7, at 100:16–101:11.

[12] Piske Dep., Doc. 47-7, at 63:3–13.

[13] The only potentially contrary piece of evidence is Mr. Piske's deposition statement that there was no "meeting of the minds" about the location of the easement. (Piske Dep., Doc. 46-6, at 2–12.) In the overall context of his testimony and actions, the Court finds it to be more likely that Mr. Piske was under some of the same misapprehensions evidenced by the parties here and was simply expressing his disagreement with the Metzler's efforts to get him to record a written document purporting to reset Easement No. 3's permanent location over the Road. Under the legal framework described above, that is not a legally material matter. In any event, given the rest of the evidence, testimony, and conduct in the record, the Court finds this statement inadequate to create a legitimate factual dispute over whether Mr. Piske permitted the Road to be built to serve the Metzlers' easement rights.

The Court finds the original Plat at best ambiguous as to whether it was affixing the location of Easement No. 3 via a ruler-straight line drawn on a map over wetland. It seems at least as likely that the intent of that line was simply to indicate that that an easement across Lot 1 existed and that, as the text indicated, and as the legal framework discussed above makes clear could always be the case, the access was "to be located" over an appropriate route "at a later date." There is no need to resolve that ambiguity, however, as the result is the same whether the Plat actually set forth the intended original location of Easement No. 3, or left it to be determined. If the latter, then through their subsequent conduct and discussions, the Metzlers and Mr. Piske clearly agreed upon the location of the Road to serve the easement. If the former, then Mr. Piske chose (in this case not unilaterally but under the Metzlers' pressure) to relocate the easement.[14] Both are permissible, and under either interpretation, the Metzlers are correct that the Road now represents the means of exercising their rights under the easement validly created by the Plat. They are therefore entitled to summary judgment on Claim One. The Court declares and adjudges that Easement No. 3 currently tracks the location of the Road.[15]

---

[14] This is of course a double-edged sword. While it provides the Metzlers the result they seek here, it also means that Mr. Ball may, assuming the limitations expressed in Section 4.8(3) of the Restatement are met, relocate the easement yet again in the future. *See* The Right of Owners of Servient Estates to Relocate Easements Unilaterally, 109 HARV. L. REV. 1693 (1996).

[15] The legal description of the Road is filed as Doc. 47-8.

## C. Claim Two

An easement by estoppel is an equitable remedy, which a court can imply under certain circumstances, one of which is a finding that injustice can be avoided only by establishment of the servitude. *Lobato v. Taylor*, 71 P.3d 938, 950–51 (Colo. 2002). Given the Court's determination that Easement No. 3 currently tracks with the Road, there is no need to imply an easement in the same location to prevent injustice. The Court, therefore, grants summary judgment in Mr. Ball's favor on Claim Two.

## III. CONCLUSION

For the foregoing reasons, the Metzlers'+ motion for summary judgment on Claim I (Doc. 36) is **GRANTED**. Mr. Ball's motion for summary judgment (Doc. 46) is **GRANTED** in part and **DENIED** in part. All other pending motions (Docs. 51, 54) are **DENIED** as moot. The Clerk shall enter judgment as set forth herein in favor of the Metzlers and close this case.

Dated: August 9, 2019.

BY THE COURT:

*/s/ Daniel D. Domenico*
Daniel D. Domenico
United States District Judge